# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DAVID CONSTANCE                                          CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                     NO. 15-329-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DAVID CONSTANCE                                                    CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                              NO. 15-329-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State has filed an opposition to the petitioner's application, the petitioner has filed a response.  *See* R. Docs. 15 and 17.  There is no need for oral argument or for an evidentiary hearing.

On or about May 22, 2015, the *pro se* petitioner, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2006 criminal conviction and sentence, entered in the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana, on four counts of aggravated rape. The petitioner attacks his conviction on the grounds of sufficiency of the evidence, an improper denial of a challenge for cause, allowance of inadmissible hearsay testimony, and ineffective assistance of counsel.

### Procedural History

On March 17, 2006, the petitioner was found guilty of four counts of aggravated rape.  On or about April 24, 2006, the petitioner was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each count, with the sentences to run consecutively.  The petitioner thereafter filed a counseled and pro se appeal, and on November 18, 2009 his conviction and sentence were affirmed by the Louisiana First Circuit Court of Appeal.

*See State v. Constance,* 08-2585 (La. App. 1 Cir. 11/18/09), 2009 WL 3853163.  The petitioner then filed an application for supervisory writs with the Louisiana Supreme Court, which was denied on June 25, 2010.  *See State v. Dixon*, 10-0083 (La. 6/25/10), 38 So.3d 335.

On or about June 16, 2011, the petitioner filed an application for post-conviction relief ("PCR"), asserting numerous claims, and later filed a supplemental application.  The state filed procedural objections which were granted, and an evidentiary hearing was held on the petitioner's remaining claims.  On July 15, 2013, the trial court denied the petitioner's PCR application.  The petitioner's writ applications seeking review were denied by the appellate court and by the Louisiana Supreme Court, on February 24, 2014 and February 17, 2015, respectively.  On or about May 22, 2015, the petitioner filed the present application.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Constance,* 08-2585 (La. App. 1 Cir. 11/18/09), 2009 WL 3853163), are as follows:  On February 1, 2005, Christina Constance, the defendant's wife, went to the Livingston Parish Sheriff's Office to speak to someone about the defendant.  Detective Woody Overton offered to assist Christina.  Christina told Detective Overton that the defendant had forced her to sleep with his sixteen-year-old nephew.  The defendant had also performed oral sex on her seven-year-old son, and then forced her to also perform oral sex on her son.  Based on the police investigation of the matter and several Child Advocacy Center (CAC) interviews of the alleged victims, the State brought four charges, which spanned several years, against the defendant for the aggravated rape of four minors, namely, T.B., a male born on January 18, 1991; J.K., a male born on April 23, 1994; K.F., a male born on October 22, 1989; and J.F., a female born on February 22, 1993.  Each of the victims testified at trial.

According to the testimony of T.B. and T.B.'s father, the defendant was friends with T.B.'s parents in 2001 when they all lived in Livingston Parish. T.B. testified that at the defendant's trailer in Holden, the defendant asked him if he wanted to have sex with Christina. T.B. said he did not. The defendant called T.B. a "pussy" and other names. The defendant continued to harass T.B. about having sex with Christina to the point where T.B. became frightened of the defendant. The defendant told T.B. to go in the bathroom and take his clothes off. T.B. complied. He then entered the bedroom where the defendant told him to have sex with Christina, who was in the bed. T.B. then had intercourse with Christina. During the intercourse, the defendant was lying next to Christina kissing her.

J.K., his mother, Christina, and the defendant, who was not J.K.'s father, lived together in Holden in 2001. J.K. testified at trial that almost every day, from when he was seven to nine years old, the defendant touched J.K.'s "private parts" with his (defendant's) hands and mouth. J.K. stated the defendant put his (J.K.'s) "private" in the defendant's mouth. J.K. further stated the defendant made him touch the defendant's "private" with his hands and mouth. The defendant also made Christina touch J.K.'s "private" with her hands.

K.F. testified at trial the defendant used to live with them. When the defendant moved out, K.F. would visit him on the weekends in Holden, Walker, and Livingston, depending on where he lived. According to K.F., the defendant sucked his penis on several occasions. Also, the defendant tried often to anally rape him, but the defendant failed to enter his anus because K.F. would "tighten up." K.F. further testified the defendant talked him into having sex with Christina. When K.F. was having sex with Christina, she was performing oral sex on the defendant.

J.F. testified that in 2005, she, K.F. (her brother), and M.M. went to the defendant's trailer in Livingston Parish. The defendant took J.F. to the back room, forced her clothes off, and tried to stick his penis in her. J.F. testified that it hurt "[a]ll in my bottom." J.F. also testified that M.M. witnessed the incident.

R.W. testified at trial that the defendant is her half-brother. She stated she did not like the defendant and wished he were dead because he molested her when she was eleven years old. The authorities were notified, and the defendant subsequently pled guilty in October 1991 to attempted indecent behavior with a juvenile.

M.C. testified at trial. She stated she married the defendant when she was eighteen years old and that he was the father of three of her children. When the defendant was eighteen or nineteen years old, he molested her (M.C.) when she was eight or nine years old. The defendant had sex with her when she was twelve years old. At fifteen years old, M.C. ran away with the defendant. The defendant was arrested and subsequently entered a nolo contendere plea in April 1991 to contributing to the delinquency of a juvenile.

M.C. and A.C., the defendant's daughters, were interviewed by Jennifer Thomas, at the CAC in Gonzales, on February 16, 2005. The videotapes of the CAC interviews were submitted into evidence and played for the jury. M.C, who was eleven years old at the time of the interview, told Jennifer that when she was five or six years old, the defendant picked her up to carry her. While he was holding her, he touched her "privates" with his finger. It hurt her and gave her a rash. She told her mother about the incident, which the defendant denied. A.C., who was twelve years old at the time of the interview, told Jennifer that seven or eight times the defendant rubbed her "private" on the inside with his hand. During these incidents, sometimes

A.C. was standing, and sometimes she was lying down on a bed.  The defendant did not testify at trial.

## Applicable Law and Analysis

### Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.  *Id*.  *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are

presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## Substantive Review

### *Claim 1: Sufficiency of the Evidence*

The petitioner asserts that the evidence was insufficient to establish the elements of the crimes allegedly committed against T.B., J.F., J.K., and K.F.  The State of Louisiana asserts that consideration of the petitioner's claims regarding T.B., J.K., and K.F is barred in this Court by reason of the determination of the state trial court that the claims are procedurally defaulted.  In this regard, when a state court decision to deny post-conviction relief rests on a state procedural ground that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of Petitioner's federal claim.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996).  The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra*, 501 U.S. at 729-730:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.  The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d at 703.  This rule applies even if the state court addresses the substance of the claim in the alternative.  *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

In order for a state procedural bar to provide an "independent" basis for dismissal, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule. *Amos v. Scott*, 61 F.3d 333, 338 n. 15 (5th Cir. 1995). *See also Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 1127-28 (2011); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Marks v. Terrell*, 2014 WL 1246065, *8 (E.D. La. Mar. 24, 2014). The state procedural bar is presumptively adequate when the state court expressly and regularly relies upon it in deciding not to review claims for collateral relief. *Glover v. Cain, supra*, 128 F.3d at 902. Further, the procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Sones v. Hargett, supra*, 61 F.3d at 416. Even a discretionary state procedural rule can qualify as an adequate basis for barring federal habeas review. *Coleman v. Cain*, 2014 WL 348541, *5 (E.D. La. Jan. 31, 2014), *citing Beard v. Kindler*, 558 U.S. 53 (2009). As stated in *Beard, supra*, "a discretionary rule can be 'firmly established' and 'regularly followed' – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others." *Id.* at 60-61.

Notwithstanding, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). Further, a habeas petitioner may rebut the presumption of adequacy by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage

of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

It appears in this case that the State's argument is well-founded with regards to the plaintiff's claims as to J.K. and K.F. These claims were presented in claim numbers 8 and 9 in the petitioner's PCR application. As to claims 8 and 9 the state argued, pursuant to La. Code Crim. P. art. 940.4(C), that these claims were raised with the trial court but were abandoned on appeal. The trial court agreed, and granted the State's procedural objections regarding these claims.

It is apparent from a review of the transcript that the state trial court relied upon the foregoing state procedural rule in dismissing these claims. In addition, this Court finds that article 930.4 is regularly followed under circumstances substantially similar to that presented herein. *See McCray v. Caldwell*, 2016 WL 8737477, *11-12 (E.D. La. Aug. 24, 2016) (applying procedural bar in connection with a sufficiency of the evidence claim); *Logan v. Cain*, 2013 WL 3293659, *6-8 (E.D. La. June 28, 2013) (same); *Gilkers v. Cain*, 2006 WL 1985969, *9-11 (E.D. La. May 30, 2006) (same).

As noted above, the petitioner can overcome the preclusion established by a procedural default only by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996). To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising his claims in state court. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Neither "cause" nor "prejudice" has been argued or shown in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing in this case, the petitions claims regarding the sufficiency of the evidence as to victims J.K. and K.F are not properly before this Court. Specifically, this Court finds that the state court's express invocation of the procedural rule to dispense with a substantive consideration of these claims asserted on post-conviction review acts as an independent and adequate bar that precludes this Court's consideration thereof.

As to the petitioner's claim regarding the sufficiency of the evidence as to victim T.B., this claim was presented as Claim 6 in the petitioner's PCR application. The State argued that claim 6, pursuant to La. Code Crim. P. art. 930.4(B), alleged a claim which the petitioner had knowledge of and inexcusably failed to raise in the proceeding leading to his conviction. The trial court agreed, and denied the claim pursuant to La. Code Crim. P. art. 940.4(B). However, the trial court's reliance upon the referenced procedural rule was misplaced, and therefore inadequate.

At the close of the evidence, counsel for the petitioner moved for a directed verdict on the grounds that the indictment specified that the incident occurred in 2001, and T.B. testified that the incident occurred in 2003.  As such, the petitioner's claim was raised in the trial court and Louisiana Code of Criminal Procedure article 940.4(B) is inapplicable.

Turning to the merit of the petitioner's claim as it relates to victim T.B., in a federal habeas corpus proceeding, the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979) provides the standard for testing the sufficiency of the evidence.  The question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.

The petitioner alleges that the evidence was insufficient to establish that the crime occurred in 2001 as stated in the indictment.  The indictment states, "In the year 2001, David Constance did violate:…R.S. 14:42 Aggravated Rape, by committing aggravated rape upon the person of T.B., juvenile, DOB 1/18/91, white male…"  In denying a Motion to Quash filed on behalf of the petitioner prior to trial, the trial court stated that the State would be limited to the indictment, and would have to prove the elements as stated on the indictment.  At the close of the evidence, counsel for the petitioner moved for a directed verdict on the grounds that T.B. testified that the crime occurred in 2003, not 2001.  In denying the petitioner's Motion for Directed Verdict, the trial court noted that while T.B. testified that 2003 was the date of the incident, T.B.'s father testified conclusively that the incident occurred in 2001.

A review of the record reveals that T.B. testified as follows:   His date of birth is January 18, 1991, and he was 15 years old at the time of the trial in March of 2006.  When he was 11 and 12 years old, the petitioner came over to his house several times and invited him to come over

and watch a movie with his wife, Christina Constance.  In October of 2003 when he was 12 and about to turn 13, he left his Uncle's house where he was working every day, and went to petitioner's residence, in Holden, to check on a dog that his parents had given to the petitioner and his wife.  After dinner, the petitioner coerced him into having sex with Christina while the petitioner watched.  T.B. was "pretty sure" the foregoing occurred when he was 12.

T.B.'s father, Johnny Barnes, testified as follows:  T.B.'s date of birth was January 18, 1990, and that at the time of the trial T.B. was "going to be" 15.  From 2001 until sometime in 2002, they lived with his father-in-law in Holden.  Mr. Barnes believed that the foregoing occurred in 2001 when T.B. was 11 years because of the location of their residence at the time and based upon information provided to him by T.B.  When T.B. was 12, they lived in Livingston City approximately one and a half miles from the petitioner's residence.  In 2003, T.B. was living with his mother and grandmother in Ascension Parish, while Mr. Barnes was living in Mississippi.

Credibility determinations are squarely within the province of the trier of fact.  Witness credibility is an issue for the jury, not a federal *habeas* court.  Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief.  *See Schlup v. Delo,* 513 U.S. 298, 330 (1995) ("[U]nder *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott,* No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief.").

The jury obviously credited the testimony of Johnny Barnes that the rape occurred in 2001 as charged in the indictment, and such a determination was within the province of the jury. Whether T.B. was born in 1990 or 1991 is not relevant.[1]

Turning to the petitioner's claim as it relates to victim J.F., the petitioner generally attacks the credibility of the victim as he did in the state court on direct appeal. Applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Louisiana First Circuit Court of Appeal concluded that there was sufficient evidence to support the conviction, given the victim's testimony that the petitioner removed her clothes after she refused, that the petitioner attempted to penetrate her which resulted in pain, and that there was blood in her underwear the following morning. The state court found that the jury accepted the victim's account of events over the petitioner's claims of lack of penetration, and was free to make such credibility determinations. This Court agrees.

The jury was well within its role and acted quite reasonably when it credited the prosecution witnesses over the theories of the petitioner. In the instant case, the elements of the crime were established through the victim's testimony. Generally, a victim's testimony alone is sufficient to support a conviction. *Peters v. Whitley,* 942 F.2d 937, 941–42 (5th Cir. 1991); *see also Fetterley v. Whitley,* No. 94–30310, 1994 WL 708655, at *1 n. 6 (5th Cir. Dec.6, 1994).

---

[1] Pursuant to Louisiana Revised Statute 14:42, an aggravated rape includes a rape committed when the victim is under a certain age. Since the petitioner was charged with aggravated rape, T.B.'s age at the time of the offense was an essential element of the State's case. In 2001 through July of 2003, the foregoing statute provided that an aggravated rape is a rape committed upon a person when the victim is under the age of twelve years. In August of 2003, the statute increased the age of the victim to under the age of thirteen years. As such, there sufficient evidence in the record to establish that the petitioner committed the aggravated rape of T.B., whether the crime occurred in 2001 when T.B. was 11 as stated by his father, or in October of 2003 when T.B. was 12 as stated by T.B.

For the reasons noted above and by the state court, the evidence presented in the instant case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find the petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, the petitioner's claim challenging the sufficiency of the evidence is without merit.

### Claim 2:  Denial of Challenge for Cause

The petitioner asserts that the trial court erred in denying his challenge for cause of prospective juror Barbara Montz. The petitioner asserts that Ms. Montz, who wept as she recounted her nephew's molestation and later suicide, could not be fair and impartial; therefore, the trial court erred in denying the challenge for cause.

"A state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness." *Miniel v. Cockrell,* 339 F.3d 331, 338–39 (5th Cir. 2003); *Soria v. Johnson,* 207 F.3d 232, 242 (5th Cir .2000). Therefore, a petitioner is entitled to habeas relief only if he rebuts the state court's factual finding by clear and convincing evidence. *See Miniel,* 339 F.3d at 340; *Soria,* 207 F.3d at 242.

Here the trial judge observed the exchange with Ms. Montz firsthand and made a reasonable assessment of her qualifications to serve. As noted by the appellate court, the voir dire testimony as a whole establishes that Ms. Montz could have sat as an impartial juror. The petitioner has presented no evidence showing that Ms. Montz was in fact unwilling or unable to decide the case impartially according to the law and the evidence, and therefore he has not overcome the presumption of correctness that attaches to the state trial court's decision to deny the challenge for cause.

Nor has the petitioner alleged or established that the jury ultimately selected for his trial was anything other than impartial.  Ms. Montz was peremptorily struck by the defense.  Where a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal habeas corpus relief only if he demonstrates that the jury ultimately selected to try the case was not impartial.  *Ross v. Oklahoma,* 487 U.S. 81, 85–86 (1988).  Because defense counsel used peremptory challenges to strike Ms. Montz and because the petitioner fails even to allege in this proceeding that the jury ultimately selected was not impartial, his claim necessarily fails.  *See Dorsey v. Quarterman,* 494 F.3d 527, 533 (5th Cir. 2007); and *Lagrone v. Cockrell,* No. 02–10976, 2003 WL 22327519, at *12 (5th Cir. Sept.2, 2003).

### Claim 3:  Hearsay Testimony

The petitioner asserts that the trial court erred in allowing Detective Overton to testify as to statements made by Christina Constance, Jordan Domaine, and Kimberly Domaine, and allowing the videotaped interviews of Ashley Constance and Madeline Constance.  The petitioner's claims pertaining to Detective Overton's testimony regarding statements made by Jordan Domaine and Kimberly Domaine, and the videotaped statements of Ashley Constance and Madeline Constance were presented in the petitioner's PCR application as claims 2 and 4. The trial court, pursuant to La. Code. Crim. P. art. 930.4(B) and (C), granted the State's procedural objections as to these claims.  For the same reasons set forth in the Court's discussion of Claim 1, this Court is precluded from considering these claims.

As to the testimony of Detective Overton regarding the statements of Christina Constance, the petitioner asserts that the testimony was inadmissible hearsay and admission of the same violated his Sixth Amendment right to confrontation since Christina was unavailable to

testify.[2]  Assuming, *arguendo*, that Detective Overton's testimony constituted hearsay, the state appellate court concluded that any error in admission of the testimony was harmless given the trial testimony of the four minor victims, the testimony of other witnesses, and the CAC interview of M.M. entered into evidence and played for the jury which established the defendant's guilt.  The state appellate court concluded that Detective Overton's testimony was cumulative or corroborative and therefore harmless beyond a reasonable doubt.

Assuming that the complained of testimony of Detective Overton was in fact admitted in error, this Court must determine whether the state court's determination that the error was harmless is supportable or whether the admission of the evidence rendered the trial fundamentally unfair.  *See Gonzales v. Thaler,* 643 F.3d 425, 430 (5th Cir. 2011).  The task in such instance is to determine—based upon a careful review of the record as a whole—whether the petitioner has successfully established that the challenged evidence "played a crucial, critical, and highly significant role in the trial."  *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998); *Thomas v. Lynaugh,* 812 F.2d 225, 230–31 (5th Cir. 1987).  "Due process is implicated only for rulings 'of such a magnitude' or 'so egregious' that they 'render the trial fundamentally unfair.'" *Gonzales v. Thaler, supra,* 643 F.3d at 430.  "[T]he Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'  This is a high hurdle, even without AEDPA's added level of deference."  *Id.* at 431.  The question whether inadmissible hearsay evidence was harmless or actually had a substantial and injurious effect or influence upon the jury's guilty verdict depends on a number of factors, including (1) the importance of the evidence in the prosecution's case, (2) whether the evidence was cumulative,

---

[2] Christina Constance refused to testify at trial.

(3) the presence or absence of other evidence corroborating or contradicting the evidence, and (4) the overall strength of the prosecution's case against the petitioner. *Cupit v. Whitley,* 28 F.3d 532, 539 (5th Cir. 1994). Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless. *Id.* at 539.

Under *Brecht v. Abrahamson,* 507 U.S. 619 (1993), "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Nixon v. Epps,* 405 F.3d 318, 329–30 (5th Cir. 2005). It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless. *O'Neal v. McAninch,* 513 U.S. 432, 436 (1995).

After a review of the record, the Court finds that the petitioner has not established error of such magnitude as to undermine confidence in the jury's verdict and to overcome the deference afforded to the state court determination that the error in this case was harmless. The Court agrees that the testimony of the minor victims, other witnesses, and the CAC statement of M.M. established the petitioner's guilt, and the testimony of Detective Overton was merely cumulative or corroborative. The Court is convinced, therefore, that the jury would have reached the same result without consideration of the complained of testimony of Detective Overton. The petitioner does not allege how the outcome of his trial would have been different without the testimony of Detective Overton in light of the other evidence against him. As noted above, the erroneous admission of prejudicial evidence "does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). Upon a finding that the jury would have reached the same conclusion without the complained of testimony by Detective Overton, the Court is unable

to conclude that the petitioner was prejudiced in fact by its admission at trial, and this claim is without merit.

### Claim 4: Ineffective Assistance of Counsel

The petitioner asserts that his counsel was ineffective for failing to investigate. A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for *federal* habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The above showing is one that the petitioner cannot make in the instant case.

### Defective Indictment

The petitioner alleges that his counsel was ineffective for failing to investigate the dates of the alleged incidents as specified in the indictment. The petitioner further alleges that an investigation would have revealed information proving that the dates listed in the indictment were incorrect. However, the petitioner's trial counsel filed a Motion to Quash Indictment prior to trial because the dates provided therein were vague and didn't match with the dates set forth and in the warrants. After a hearing, the trial court denied the Motion and stated that the prosecution would be limited to the dates specified in the indictment. At the close of the evidence, counsel for the petitioner moved for a directed verdict on the grounds that the

testimony of the witnesses failed to prove the incidents occurred on the dates as alleged in the indictment.  The motion was denied by the trial court.  Following the trial, counsel for the petitioner filed a Motion and Order for a New Trial, a Motion for Post Verdict Judgment of Acquittal, and a Motion and Order in Arrest of Judgment and reasserted therein that the dates provided in the indictment were vague and lacking the required specificity.  All three Motions were denied by the trial court.

Based on the record before the Court it is obvious the petitioner's trial counsel was aware of the alleged deficiencies in the indictment, and filed all motions that he deemed appropriate to challenge the indictment both prior to, during, and following the trial. The petitioner has failed to demonstrate that his counsel's representation fell below an objective standard of reasonableness in this regard.

### Physical Examination of J.F.

The petitioner alleges that his trial counsel was ineffective for failing to request a physical examination of J.F. because "the possibility of this being a false allegation could have been better defended if there would have been some type of medical evidence to validate sexual assault."  The petitioner's claim is entirely speculative, and the petitioner has failed to demonstrate either deficient performance or prejudice.

### Evidence Regarding Child Pornography

The petitioner alleges that his counsel was ineffective for allowing the state to present evidence regarding child pornography.  When the state moved to introduce photographs of the items seized pursuant to the search warrant, counsel for the petitioner objected on the grounds that the photographs were being introduced in order to establish bias against his client since the warrant was for child pornography, but while pornography was found, no child pornography was

located in the petitioner's residence. The objection was overruled. On cross-examination, the petitioner's counsel asked Detective Overton why he did not get a search warrant for Christina Constance, and Detective Overton replied that Christina had stated that the petitioner had child pornography in the residence. The petitioner's trial counsel then questioned Detective Overton extensively regarding the fact that no child pornography was found in the residence, and attempted to discredit Detective Overton's speculative testimony that the petitioner had hidden the pornography prior to the execution of the search warrant. The petitioner has failed to demonstrate either deficient performance or prejudice in this regard.

### *Impeachment Testimony*

The petitioner alleges that his trial counsel was ineffective for failing to investigate in order to obtain information to impeach and otherwise discredit the testimony of Christina Constance, and for failing to impeach the testimony of Mary Maison and Melissa Constance. As to Christina Constance, the petitioner alleges that his counsel could have obtained information about various topics to impeach and otherwise discredit the testimony of Christina Constance. However, when called to testify at trial, Mrs. Constance invoked her Fifth Amendment right not to testify and the petitioner's trial counsel did not have an opportunity to impeach her testimony.

As to Mary Maison, the petitioner alleges that his trial counsel failed to impeach her trial testimony regarding a phone call. At trial Mary was asked if she called home at any time during the weekend in question, and Mary responded affirmatively. The petitioner alleges that Mary had previously stated that she was not allowed to call home because the petitioner had locked the phone in a safe. The petitioner fails to show that his counsel's decision not to impeach Mary was not part of a reasonable trial strategy. It was entirely reasonable not to draw attention to Mary's prior statement which offered further circumstantial evidence of the petitioner's guilt.

With regards to the testimony of Melissa Constance, the petitioner alleges that his counsel failed to review her CAC video prior to trial and that if his counsel had done so, he would have been able to impeach her testimony. The petitioner has not given any specific examples of impeachable testimony. Even if this Court were to assume that the petitioner's counsel was deficient as alleged by the petitioner, the petitioner has not shown a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

### Knowledge of Witness Jennifer O'Brien

The petitioner alleges that his counsel was ineffective for failing to have knowledge of Jennifer O'Brien, a witness for the State. The record reflects that when Jennifer was called as a witness, counsel for the petitioner informed the Court that he was unaware that she would be called to testify. Nevertheless, the record reflects that the petitioner's trial counsel was adequately prepared to cross-examine Jennifer. Jennifer was questioned regarding the age of her daughter, about smoking marijuana with Christina Constance, and about her prior arrests in an attempt to discredit her testimony. The petitioner has failed to demonstrate either deficient performance or prejudice.

### Prior Allegations by T.B. and K.F.

The petitioner alleges that his counsel was ineffective for failing to fully investigate prior similar allegations made by T.B. and K.F. against other men. A review of the record reveals that the petitioner's trial counsel questioned T.B. as to his involvement in another trial. T.B. stated that he was a victim in another matter, but that he did not testify. The petitioner's trial counsel did not pursue any further questioning regarding the prior matter, and instead focused on T.B.'s testimony regarding the alleged date of incident. The petitioner has failed to show that his

counsel's decision to focus on the alleged date of the incident, rather than the prior trial where the defendant in that matter had been convicted, was not part of a reasonable trial strategy.

As to K.F., the petitioner's trial counsel questioned K.F. extensively regarding prior false allegations made against a man named George. K.F. responded honestly regarding the false accusations, and explained his actions. When asked about Gail Rodriguez, K.F. denied having a relationship with Ms. Rodriguez, and stated that she was a family friend. K.F. also denied ever telling anyone that he had a relationship with Ms. Rodriguez. Counsel for the petitioner then changed his line of questioning. While K.F. was candid regarding the allegations against George, he denied making any allegations against Ms. Rodriguez and counsel for the petitioner moved on. The petitioner has again failed to show that counsel's decision to not pursue further questioning regarding Ms. Rodriguez was not part of a reasonable trial strategy. As such, the petitioner's claim of ineffective assistance of counsel is without merit.

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).  In the instant

case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254

application or the correctness of the procedural ruling.  Accordingly, it is appropriate that, in the

event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability

should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied,

with prejudice, as untimely.  It is further recommended that, in the event that the petitioner seeks

to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**